**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Aaniyah Clay,

  Plaintiff(s),

v.

Trans Union LLC,

  Defendant(s).

Case No. 2:25-cv-00179-JCM-NJK

**Referral to the State Bar of Nevada**

Pending before the Court is an order for defense counsel to show cause why they should not be referred to the state bar for potential investigation. Docket No. 83. Trans Union and its attorneys filed a response. Docket No. 89.[1]

Pursuant to Canon 3(B)(6) of the Code of Conduct for United States Judges, "[a] judge should take appropriate action upon receipt of reliable information indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct." Both the unauthorized practice of law and the aiding of another's unauthorized practice of law violate Nevada's ethical rules. Nev. R. Prof. Cond. 5.5(a). Such conduct may lead to disciplinary proceedings and other adverse consequences. *See, e.g.*, *in re Discipline of Lerner*, 197 P.3d 1067 (Nev. 2008).

The only attorney of record for Defendant Trans Union in this case is local attorney Sarai Brown with Skane Mills LLP. Trans Union also has a long-standing relationship with out-of-state lawyers from Quilling, Selander, Lownds, Winslett & Moser P.C. ("QSLWM"), who are active in this litigation. The QSLWM lawyers are neither admitted to this Court in general nor admitted for

---

[1] The response improperly combines the response and the exhibits of supporting declarations as a single PDF. *But see* Local Rule IC 2(a)(3)(A). As such, the Court cites herein to the page numbers of the declarations rather than the paragraph numbers.

1

purposes of this particular case.[2]  In their current filings, counsel swear that it is actually local attorney Brown with lead responsibility over this case and that the QSLWM attorneys are merely assisting local attorney Brown from afar.  *See, e.g.*, Docket No. 89 at 8, 18, 25.  The record is not so clear.  QSLWM attorneys have been deeply involved in seemingly every aspect of this case exercising professional judgment.  *See id.* at 5.[3]  It also appears that QSLWM attorneys alone communicate with the client.  *Compare id.* at 21 *with id.* at 26.  It is left unclear how local attorney Brown could be the lead attorney in charge of this litigation when there is no evidence in the record that she has any contact with the client.  Counsel also acknowledge an "inadvertent" subpoena being issued and served by an out-of-state QSLWM attorney without local attorney Brown's involvement.  *See, e.g.*, *id.* at 21.  The papers fail to explain why or how it would come to be that QSLWM attorneys issued a subpoena without local attorney Brown's involvement if she is in fact the lead attorney with responsibility for this case.

The above circumstances alone raise significant concern as to the representations being made.  Even more significantly, the current attestations that local attorney Brown bears ultimate responsibility are contrary to the other evidence before the Court.  Defense counsel pointed to a specific email exchange from another case as being emblematic of their relationship. *See* Docket No. 80 at 2 (pointing to Case No. 2:24-cv-02124-GMN-EJY and an email exchange about that case as identifying "the relationship between Trans Union and [QSLWM]").  That email thread evidences that it is the out-of-state attorney (Kyle Pietrzak) who is "handling this case for Trans Union."  Docket No. 81-1 at 5; *see also id.* at 2 ("TransUnion has instructed me to proceed with

---

[2] This District has established two primary methods for an attorney to become authorized to practice law in this forum.  First, that attorney may apply to be admitted to the bar of this Court.  Local Rule IA 11-1(a)(1).  This process requires, *inter alia*, that the attorney is admitted to practice before the Supreme Court of Nevada and remains in good standing therewith.  *Id.*  Second, an attorney may apply to be admitted to practice in a particular case.  Local Rule IA 11-2(a).  This process requires, *inter alia*, the payment of a fee, Local Rule IA 11-2(b), and the absence of regular practice in this Court by the applicant, Local Rule IA 11-2(h).

[3] Counsel's submissions leave gaps.  For example, local attorney Brown attests to a lot of "review[ing], revis[ing], and communicat[ing] with QSLWM attorneys."  Docket No. 89 at 26.  The QSLWM declaration also swears to reviewing and revising pleadings and other filings, along with "collaborat[ing]" on the dispositive motion practice.  Docket No. 89 at 21.  Of course, to review or revise there must be underlying work product in existence.  The papers fail to identify which attorney(s) actually wrote those filings or otherwise took the lead in preparing those filings.

litigation on this matter"). Indeed, local attorney Brown was not even part of these communications while Attorney Pietrzak and Plaintiff Clay were discussing the substance of the case (and potentially settlement). *See id.* at 2-6. Once the conversation turns to the need to convene a Rule 26(f) conference, it is at that point that out-of-state attorney Pietrzak adds local attorney Brown[4] to the email chain, explaining that she is "local counsel" who is "responsible for any hearing appearances and/or conference attendance." Docket No. 81-1 at 2.[5] While counsel now specifically disclaim that local attorney Brown was hired or acting simply as an "appearance counsel" to make "an appearance to cover specific hearings or conferences," Docket No. 89 at 6, that is quite literally what is explained in this email chain that counsel themselves highlighted as the epitome of their attorney relationship.[6]

The papers reference potential exceptions that allow legal practice within the state without being admitted. *See* Nev. R. Prof. Cond. 5.5(b)(5), 5.5(b)(6). It is not clear that these exceptions apply in the circumstances presented. As a threshold matter, the papers do not actually discuss the governing rules and the specific controlling text.[7] Instead, the papers pivot immediately to an ABA model rule with different language and with no explanation as to how or why that rule (or related case law) should control the issues before the Court. Moreover, while the cited Nevada rules do in fact create certain exceptions, the exceptions are narrowed to instances of *occasional* and *irregular* practice. Nev. R. Prof. Cond. 5.5(b)(5), 5.5(b)(6). On the other hand, out-of-state attorney Pietrzak has worked on ten other cases within Nevada over the last three years, plus the instant case. *See* Docket No. 89 at 20; *see also id.* at 20-21 (identifying 12 cases on which Attorney Myers has worked). It would certainly seem a stretch to find that an attorney working on 11 cases

---

[4] It appears local attorney Brown's last name at that time was Thornton.

[5] Counsel now swear that the "local counsel" moniker is "more of a geographic reference and is not meant to suggest that [local attorney Brown] does not have actual responsibility." Docket No. 89 at ¶ 4. The current representation stands in stark contrast to the email that counsel put forth, which appears to demonstrate a typical local counsel relationship.

[6] The Court quoted from this email thread in the order to show cause, Docket No. 83 at 1-2, but the response to the order to show cause does not directly address the email thread.

[7] The papers merely cite the Nevada rules, before pivoting to an ABA model rule with different language. *See* Docket No. 89 at 8-12.

in Nevada in three years would be considered occasional and irregular. *Compare* Local Rule IA 11-2(f)(1) (rule governing *pro hac vice* applications prohibiting "repeated appearances" and indicating that "[i]t is presumed in civil and criminal cases that more than five appearances by any attorney granted under this rule in a three-year period is excessive use of this rule").

Given the record before the Court, there is a likelihood[8] that the out-of-state attorneys with QSLWM are engaged in the unauthorized practice of law in Nevada and that local attorney Brown is assisting in the unauthorized practice of law. As such, the Court refers this matter to the state bar for further investigation as it may deem fit. The Clerk's Office is **INSTRUCTED** to provide a copy of this order, as well as Docket Nos. 79, 80, 81, 82, 83, and 89 (including all exhibits to these docket entries) to:

> State Bar of Nevada
> Attn: Office of Bar Counsel
> 3100 W. Charleston Blvd., Suite 100
> Las Vegas, NV 89102

Except as stated above, the order to show cause is otherwise **DISCHARGED**.

IT IS SO ORDERED.

Dated: April 7, 2026

_____
Nancy J. Koppe
United States Magistrate Judge

---

[8] The Court does not herein make any factual findings, but merely finds a likelihood triggering the judicial duty to take appropriate action. *See Serio v. Pregame LLC*, 2023 WL 3223796, at *1 n.1 (D. Nev. May 3, 2023). The Court leaves it to the state bar to decide whether further investigation is warranted and, if so, to make factual findings upon conclusion of that investigation.